1
2
3
4
5
6
7
8
9
10
11                    **UNITED STATES DISTRICT COURT**
12                      **DISTRICT OF NEVADA**
13
14  WILLIAM FRENCH,                    )        3:13-cv-00209-HDM-WGC
                                       )
15              Plaintiff,             )
                                       )        ORDER
16  vs.                                )
                                       )
17  CARSON CITY, BRIAN MENDOZA, JIMMY  )
    SURRATT, and DAVE RAMSEY,          )
18                                     )
                Defendants.            )
19  _____   )

20       Plaintiff William French ("plaintiff") filed the instant

21  complaint in state court on March 25, 2013, alleging eleven state

22  and federal claims against defendants Brian Mendoza ("Mendoza") and

23  Jimmy Surratt ("Surratt"), Dave Ramsey ("Ramsey"), and Carson City

24  (collectively "defendants").  Defendants removed to this court on

25  April 23, 2013, and filed for summary judgment on all of

26  plaintiff's claims on March 26, 2014.  Plaintiff has opposed

27  defendants' motion (#26), and defendants have replied (#29).

28

                                1

**Facts**

The following facts are taken primarily from defendants' motion for summary judgment and attached exhibits. Plaintiff largely has not taken issue with the facts as presented by defendants, except where specifically noted.

On August 9, 2011, at around 11:20 p.m., Carson City deputies Mendoza and Surratt were separately dispatched to an apartment complex in Carson City on reports that a subject was carrying a bottle of alcohol and knocking on the doors of people he did not know. (Mot. Summ. J. Ex. 1 (Mendoza Dep. 5); *id.* Ex. 2 (Surratt Dep. 5-6); *id.* Ex. 3). Mendoza arrived first and observed plaintiff "having a very loud conversation" with a tenant at the tenant's front door.[1] (Mot. Summ. J. Ex. 1 (Mendoza Dep. 5-6)). Plaintiff was wearing what appeared to be women's panties on his head and had a bottle in his hand containing what appeared to be clear alcohol. *Id.* Ex. 1 (Mendoza Dep. at 6); *id.* Ex. 3. Mendoza exited his vehicle and approached plaintiff, who began walking toward the back of the building. (Mot. Summ. J. Ex. 1 (Mendoza Dep. 6). Mendoza followed plaintiff and told him to have a seat, which plaintiff did. *Id.* Ex 1 (Mendoza Dep. 5-6); *id.* Ex. 3.

Mendoza asked plaintiff for his name. Plaintiff responded "Robert French." (Mot. Summ. J. Ex. 1 (Mendoza Dep. 10)). Mendoza asked plaintiff why he was in the area, and plaintiff responded that he was just trying to get some cigarettes. *Id.* By this time,

---

[1] In his police report, Mendoza described it as a "very vocal conversation." (Mot. Summ. J. Ex. 3). Plaintiff argues that this description, written closer in time to the events, is inconsistent with Mendoza's later recollection during his deposition that the conversation was "very loud."

Mendoza had ascertained that plaintiff was intoxicated.  *Id.*
Plaintiff submitted to a preliminary breath test, which registered
a blood alcohol level of .215.  (Mot. Summ. J. Ex. 3).  Mendoza
checked plaintiff for warrants under the name "Robert French," and
finding none then began trying to find a way to get plaintiff home.
*Id.* at 11.  Plaintiff told Mendoza that he lived in Douglas,
Nevada.  *Id.* Ex. 1 (Mendoza Dep. at 10-11).  At Mendoza's request,
plaintiff provided a phone number for someone who could pick him
up, but the number was disconnected.  *Id.*  Plaintiff then asked
Mendoza to give him a ride to Indian Hills, and Mendoza replied
that he could not as Indian Hills was in another county.  *Id.* at
11-12.  Mendoza offered to get plaintiff a cab, but plaintiff
stated he did not have any money.  *Id.* at 12.

In the meantime, Surratt had arrived on scene, observed
Mendoza speaking with plaintiff, and proceeded to interview one of
the apartment tenants.  (Mot. Summ. J. Ex. 2 (Surratt Dep. 6-7);
*id.* Ex. 3).  Surratt contacted Mendoza and relayed what the tenant
had told him: that the plaintiff, wearing women's underwear on his
head, had knocked on the tenant's door and tried to sell the tenant
his bottle of alcohol.  (Mot. Summ. J. Ex. 1 (Mendoza Dep. 12-13);
*id.* Ex. 2 (Surratt Dep. 6-7, 11); *id.* Ex. 3).

Mendoza decided to arrest plaintiff for disorderly conduct.
(Mot. Summ. J. Ex. 1 (Mendoza Dep. 13)).  Mendoza based his
decision on: (1) the fact that when he arrived, he heard plaintiff
yelling profanities at the tenant with whom he'd been speaking; (2)
what the tenant and the reporting party had said about plaintiff's
conduct; and (3) plaintiff's demeanor and intoxication.  *Id*.  Once
the decision had been made, Surratt brought out his police canine

3

to "deter resistance." (Mot. Summ. J. Ex. 2 (Surratt Dep. 7)).

Mendoza informed plaintiff he was going to arrest him for disorderly conduct and asked him to put his hands behind his back. (Mot. Summ. J. Ex. 1 (Mendoza Dep. 14)). From his seated position, plaintiff said he wasn't going to jail and refused to put his hands behind his back.[2] (Mot. Summ. J. Ex. 1 (Mendoza Dep. 14)). Instead, he leaned forward and "kind of clenched his arms together in front of him." *Id.* Mendoza tried to pull plaintiff's right arm behind his back, but plaintiff did not release his grip and resisted Mendoza's pressure to move his arm. *Id.* at 14-15. Mendoza told plaintiff again to cooperate and put his hands behind his back, but plaintiff refused. *Id.* at 15. Mendoza then removed his taser gun, placed it on plaintiff's back, and told plaintiff that if he did not cooperate and put his hands behind his back he would be tased. *Id.;* (Mot. Summ. J. Ex. 3). Instead, plaintiff continued to try standing up. Mendoza told plaintiff to stop resisting and tried to prevent plaintiff from standing up. *Id.* at 15-16. When plaintiff attempted to stand up again, Mendoza applied a contact tase to his back. *Id.* at 18. Plaintiff fell forward onto his knees.[3] *Id.;* Mot. Summ. J. Ex. 3.

Meanwhile, Surratt had been standing in front of plaintiff with his police canine. (Mot. Summ. J. Ex. 1 (Mendoza Dep. 16)). When Surratt observed plaintiff trying to get to his feet in "an aggressive manner," Surratt said he warned that if plaintiff did

---

[2] Plaintiff admits that he refused to put his arms behind his back. (Pl Compl. ¶ 13).

[3]Plaintiff argues that a reasonable juror could conclude that plaintiff fell forward from the contact tase and was not, as suggested by the defendants, being aggressive.

not stop he would deploy the canine and the canine would bite.  *Id.*
Ex. 2 (Surratt Dep. 14).  Mendoza did not testify that Surratt
deployed the canine only after a warning.  Surratt then deployed
the canine, who bit plaintiff in the buttocks.  (Mot. Summ. J. Ex.
2 (Surratt Dep. 12-13); *id.* Ex. 1 (Mendoza Dep. 19-20)).

According to Surratt, plaintiff was becoming more "aggressive"
and "violent."  (Mot. Summ. J. Ex. 2 (Surratt Dep. 16-17)).  As
plaintiff tried to get up again, Surratt deployed the canine once
more; this time, the canine bit plaintiff on the left forearm and
held.  (Mot. Summ. J. Ex. 1 (Mendoza Dep. 20); id. Ex. 2 (Surratt
Dep. 16)).  Plaintiff began striking the canine several times in
the "few seconds" before Surratt recalled him.  (Mot. Summ. J. Ex.
1 (Mendoza Dep. 20-21); *id.* Ex. 2 (Surratt Dep. 17)).  While
plaintiff was striking the canine, Surratt continued to command
plaintiff to put his arms behind his back.  *Id.* Ex. 3.  After the
canine released, plaintiff attempted to stand again.  (Mot. Summ.
J. Ex. 1 (Mendoza Dep. 21)).  Mendoza responded by shooting
plaintiff in the back with a taser dart.  (Mot. Summ. J. Ex. 1
(Mendoza Dep. 22)).  Plaintiff calmed down, and Mendoza handcuffed
him and took him into custody.  (Mot. Summ. J. Ex. 1 (Mendoza Dep.
23-24)).

As alleged in his complaint (and unaddressed by defendants),
plaintiff's forearm wound was "akin to a shark bite" with "chunks"
missing from it.  (Pl. Compl. ¶ 16).  Mendoza called fire and
rescue, which responded and bandaged plaintiff's arm.  (Mot. Summ.
J. Ex. 1 (Mendoza Dep. 30); *id.* Ex. 3).  Mendoza then transported
plaintiff to the hospital, where the wound was cleaned and x-rayed.
(Mot. Summ. J. Ex. 1 (Mendoza Dep. 31-32)).

1    While at the hospital, plaintiff stated that his real name was
2 not "Robert French" but was instead "William French"; Robert was in
3 fact plaintiff's brother.  (Mot. Summ. J. Ex. 1 (Mendoza Dep. 34);
4 *id.* Ex. 3).  Running a report under "William French," Mendoza
5 discovered that plaintiff was on probation with a no-alcohol
6 clause. (Mot. Summ. J. Ex. 1 (Mendoza Dep. 34)).

7    Upon release from the hospital, plaintiff was taken to Carson
8 City Jail.  (Mot. Summ. J. Ex. 1 (Mendoza Dep. 35)).  He was
9 eventually charged with: (1) mistreatment of a police animal; (2)
10 using false information to avoid prosecution; (3) resisting a
11 public officer; (4) disorderly conduct; and (5) alternative
12 sentencing violation (probation).  (Mot. Summ. J. Ex. 1 (Mendoza
13 Dep. 37-38); *id.* Ex. 3).  In the end, plaintiff pleaded guilty to
14 providing false information to avoid prosecution, and the remaining
15 claims were dismissed.  (Pl. Compl. ¶ 21).

16    While in the Carson City Jail, plaintiff's forearm wound was
17 treated by defendant Ramsey, who did daily dressing changes, kept
18 the wound clean, and gave plaintiff antibiotics and pain
19 medications as needed.  (Mot. Summ. J. Ex. 4 (Ramsey Dep. 8)).
20 Initially, the wound seemed to be healing, but one day Ramsey
21 noticed a change for the worse.  *Id.* at 9-10.  Ramsey called a
22 doctor for a second opinion; the doctor advised that while he did
23 not quite see what Ramsey saw, plaintiff should be sent for wound
24 care at the hospital if Ramsey thought the wound had worsened.  *Id.*
25 at 10; Mot. Summ. J. Ex. 5.  Plaintiff was evaluated by a doctor
26 with the Carson Surgical Group on September 13, 2011, and
27 thereafter received wound treatment at the hospital two to three
28

times a week.[4]   (Mot. Summ. J. Ex. 4 (Ramsey Dep. 10); *id.* Ex. 5).
Eventually doctors determined plaintiff needed surgery, which he
underwent on November 28, 2011, and December 5, 2011.  (Mot. Summ.
J. Exs. 7 & 8).

    Plaintiff filed the instant complaint asserting claims based
on his arrest and subsequent medical care.  Defendants move for
summary judgment on all claims, both on the merits and, where
applicable, on grounds of qualified or discretionary immunity.
Defendants argue the material facts are not in dispute and they are
therefore entitled to judgment as a matter of law.

**Standard**

    "The court shall grant summary judgment if the movant shows
that there is no genuine issue as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  The burden of demonstrating the absence of a genuine
issue of material fact lies with the moving party, and for this
purpose, the material lodged by the moving party must be viewed in
the light most favorable to the nonmoving party.  *Adickes v. S.H.
Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los
Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of
fact is one that affects the outcome of the litigation and requires
a trial to resolve the differing versions of the truth.  *Lynn v.
Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir.

---

    [4] Ramsey testified that it was twice a week, but defendants maintain
Carson City Sheriff's Office records show plaintiff was actually treated
three times a week.  (Mot. Summ. J. 7 n.3).  Plaintiff suggests that these
records might actually mean that plaintiff was *supposed* to be treated three
times a week and that Ramsey, who recollected sending plaintiff only twice
a week, may have been deliberately indifferent in failing to adhere to the
prescribed course of treatment.

1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary

judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

If the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact.  *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers").  The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).  "[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts.  But if the nonmoving party fails to discharge that burden-for example by remaining silent-its opportunity is waived and its case wagered." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

**Analysis**

Plaintiff's complaint asserts five federal causes of action and six state law causes of action against the defendants: (1) Fourth Amendment excessive force against defendants Mendoza and Surratt; (2) municipal liability against defendant Carson City for allowing indiscriminate use of police canines and tasers where lesser force would be effective; (3) Fourteenth Amendment malicious

prosecution against Mendoza and Surratt; (4) municipal liability against Carson City for an alleged policy or custom that resulted in malicious prosecutions; (5) false arrest against Mendoza and Surratt; (6) state law malicious prosecution against Mendoza and Surratt; (7) false imprisonment against Mendoza and Surratt; (8) negligent hiring, training, and supervision against Carson City; (9) respondeat superior against Carson City; (10) intentional infliction of emotional distress against Mendoza and Surratt; and (11) Eighth Amendment cruel and unusual punishment and Fourteenth Amendment deliberate indifference to medical needs against defendant Ramsey, as well as a municipal liability claim against Carson City based thereon.

## I.    **Fourth Amendment Excessive Force**

Plaintiff asserts a claim of excessive force against Mendoza and Surratt based on their combined use of the taser and the police canine to effectuate plaintiff's arrest.

To prove a violation under § 1983, a plaintiff must establish that the defendant (1) acting under color of law (2) deprived plaintiff of the rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). Plaintiff alleges, and defendants do not dispute, that they were acting under the color of law. The issue is therefore whether the defendants violated a constitutional right of the plaintiff. In this first claim for relief, plaintiff asserts that by employing excessive force in his arrest, Mendoza and Surratt violated his Fourth Amendment right to be free of unreasonable search and seizure.

A claim that officers have used excessive force in the course

of seizing a person is analyzed under the Fourth Amendment's objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The test is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011). To determine if a Fourth Amendment violation has occurred, the court first assesses the gravity of the intrusion by evaluating the type and amount of force inflicted. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). The court then balances "the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests" in order "to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. To do so, a court must pay careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight. We also consider, under the totality of the circumstances, the quantum of force used, the availability of less severe alternatives, and the suspect's mental and emotional state. All determinations of unreasonable force, however, must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (internal punctuation and citations omitted).

11

Plaintiff argues in opposition to summary judgment that the deputies lacked probable cause to arrest him for disturbing the peace and therefore the arrest was unlawful, the resulting use of force and detention were unreasonable, and plaintiff was justified in his actions.  Specifically, plaintiff argues that under Nevada law officers may arrest for a misdemeanor only where it is committed in their presence, Nev. Rev. Stat. § 171.124, that disturbing the peace is a misdemeanor, and that what Mendoza observed of plaintiff's behavior did not amount to disturbing the peace.

Under the Carson City Municipal Code, it is disorderly conduct "for any person to . . . disturb the peace and quiet of any person, family or neighborhood by loud, violent or offensive language, or by boisterous, tumultuous or offensive conduct . . . ."  Carson City Mun. Code § 8.04.010.  Plaintiff asserts that talking to a tenant while wearing underwear on his head and carrying and trying to sell a bottle of alcohol does not meet this definition because it is not loud or offensive language nor boisterous or offensive conduct.  In particular, plaintiff appears to assert that Mendoza's post hoc description of the discussion as "loud" creates an issue of fact where Mendoza initially described the conversation as only "vocal" in his report.

Plaintiff's argument in this respect is unpersuasive.  Already aware that a man had been knocking on tenants' doors late at night while carrying a bottle of alcohol, Mendoza arrived on scene and personally observed plaintiff, wearing what appeared to be women's underpants on his head and carrying a bottle of liquor, talking at

12

least "vocally" to, and yelling profanities at, a tenant.[5]  It was
nearly midnight.  In the context of the tenants' reports, it would
have therefore been clear to a reasonable officer that plaintiff
was disturbing the peace and quiet of the apartment tenants with
either "loud . . . or offensive language" or "boisterous . . . or
offensive conduct."  Mendoza was thus authorized to arrest
plaintiff for the offense of disorderly conduct.

Plaintiff's second argument is that even if the deputies had
probable cause, the force they used to arrest him was unreasonable.
He argues that none of his conduct justified the escalation of
force the deputies applied because he was seated on the ground and
"highly intoxicated," suggesting, it appears, that he was in no
position to take action that could harm the deputies.  Plaintiff
also argues that a reasonable juror could conclude his movement
upon being tased was an involuntary physical response to the tase
and not a move of aggression or flight.  He argues escape would
have been nearly impossible with two officers and a police canine
surrounding him.  Plaintiff also argues that he was on all fours,
and therefore a reasonable juror could conclude that his attempts
to get up were not attempts to get on his feet but instead were
attempts to get on his knees so he could be handcuffed.  Plaintiff
argues that the crime for which he was being arrested was not a
serious crime and involved no violence.  Finally, plaintiff argues
that the officers could have used much less force, including no

---

[5] The court is not persuaded by plaintiff's argument that Mendoza
changed his story from the time of his report to the time of his deposition
in order to manufacture probable cause.  A description of the conversation
as loud is not materially different from a description of the conversation
as "vocal."  Plaintiff has not taken issue with Mendoza's testimony that
plaintiff had also been yelling profanities.

force at all by simply issuing a citation and notice to appear.

Defendants assert that their escalating use of force was necessary and reasonable under the circumstances because plaintiff was actively and aggressively resisting arrest, including repeatedly striking the police canine.  Defendants assert that because plaintiff was not compliantly yielding or physically subdued and was aggressive they had the right to use intermediate force, citing *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003). In addition, defendants argue that there is no evidence that they encouraged the canine to bite more forcefully or for longer than it would have otherwise done, and that plaintiff's substantial forearm wound is most logically the result of his own resistance to arrest and battering of the canine and not of any provocation of the canine's bite by the defendants.  Finally, defendants assert that a citation and notice to appear was not reasonable under the circumstances given plaintiff's highly intoxicated state and the fact there was no way to remove him from the area – where he was disturbing the peace – absent arrest.

A question of fact exists as to the degree to which plaintiff resisted arrest, even under the defendants' version of the events. A jury could conclude the plaintiff's conduct was in fact relatively mild and perhaps even passive rather than threatening. That, combined with the relatively minor offense for which plaintiff was being arrested – disorderly conduct – creates an issue for the trier of fact as to whether the officers' response to

plaintiff's resistance was objectively reasonable.[6]  Summary

judgment must therefore be **DENIED** as to plaintiff's excessive force

claim against Mendoza and Surratt.

## II.  Municipal Liability Related to Excessive Force

Plaintiff asserts a claim of municipal liability against

defendant Carson City based on an alleged policy and custom of

allowing indiscriminate use of tasers and canines when lesser force

would be effective.

A municipality may be held liable only where it inflicts an

injury; it may not be held liable under a respondeat superior

theory.  *Monell v. Dep't of Social Servs. of City of New York*, 436

U.S. 658, 691 (1978); *Gibson v. County of Washoe*, 290 F.3d 1175,

1185 (9th Cir. 2002).  A municipality may be liable for injuries

inflicted pursuant to its own policies, regulations, customs, or

usage.  *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).  In

order for the municipality to be held liable, "there must be a

direct causal link between a municipal policy or custom and the

alleged constitutional deprivation."  *Villegas v. Gilroy Garlic

Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (internal

quotation marks omitted).

---

[6] Defendants' reliance on *Miller* is insufficiently persuasive at this
stage of the proceedings.  First, the facts of *Miller* differ in several
material respects from this case.  Specifically, in *Miller* there was some
indication the plaintiff could be armed and the plaintiff had actually fled
from the officers and was in an area that the plaintiff knew well but the
officers did not.  There is no evidence currently before the court
suggesting that the plaintiff in this case could have been armed, nor had
he fled.  The court is therefore not convinced that plaintiff could have
"generat[ed] surprise, aggression, and death," *id.* at 965, in the same way
as the plaintiff in *Miller.*  Further, the court would note that *Miller* was
decided after a trial, not on summary judgment.  Accordingly, the court
there had before it all the relevant facts and was able to resolve disputed
issues of material fact, which at this stage the court cannot do.

The complaint alleges that Carson City has "approved of the indiscriminate use of K-9's and tasers to obtain compliance where lesser forms of force would accomplish the same objectives. . . ." (Pl. Compl. ¶ 29). Plaintiff asserts that Carson City deputies "routinely" use canines in passive situations and therefore there is a practice of "employing attack canines on arrestees, regardless of any threat assessment." The only evidence plaintiff cites for this assertion is the deposition testimony of Surratt, who when asked whether he brings out his canine as standard procedure, stated "I bring my canine out a lot to deter resistance, yes." (Mot. Summ. J. Ex. 2 (Surratt Dep. 7:14-15)). This evidence is not only insufficient to establish a policy, as Surratt testified only that *he* routinely brings out canines to deter resistance, but it is also insufficient to establish that the canines are actually used to bite passive arrestees, as Surratt testifies only that he routinely brings out the canine to *deter resistance.* Accordingly, plaintiff has failed to present triable issues of fact that would support a municipal liability claim against Carson City based on a custom, policy, or practice of employing excessive force through indiscriminate use of police canines and tasers. Summary judgment will therefore be granted on this claim.[7]

## III. Fourteenth Amendment Malicious Prosecution

Plaintiff asserts a claim of malicious prosecution under § 1983 against defendants Mendoza and Surratt.

"In order to prevail on a § 1983 claim of malicious

_____

[7] In his opposition, plaintiff also argues the City was deliberately indifferent because canines are trained to not let go until commanded to do so. However, no such claim is included in the plaintiff's complaint.

1   prosecution, a plaintiff must show that the defendants prosecuted

2   him with malice and without probable cause, and that they did so

3   for the purpose of denying him equal protection or another specific

4   constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062,

5   1066 (9th Cir. 2004) (internal punctuation omitted); *see also Haupt*

6   *v. Dillard*, 17 F.3d 285, 290 (9th Cir. 1994).

7       "[P]robable cause is an absolute defense to malicious

8   prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-

9   55 (9th Cir. 2009). "Probable cause to arrest exists when officers

10  have knowledge or reasonably trustworthy information sufficient to

11  lead a person of reasonable caution to believe that an offense has

12  been or is being committed by the person being arrested." *Fayer v.*

13  *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

14      As already noted, plaintiff was charged with five crimes: (1)

15  disorderly conduct; (2) mistreatment of a police animal; (3) using

16  false information to avoid prosecution; (4) resisting a public

17  officer; and (5) alternative sentencing violation (probation).  It

18  is not clear whether plaintiff bases his claim on all five counts,

19  but the court will address each in turn.

20      Disorderly conduct occurs when a person "disturb[s] the peace

21  and quiet of any person, family or neighborhood by loud, violent or

22  offensive language, or by boisterous, tumultuous or offensive

23  conduct . . . ."  Carson City Mun. Code § 8.04.010.  Plaintiff was

24  reportedly knocking on people's homes at 11:20 p.m., carrying and

25  trying to sell a bottle of liquor, and wearing underwear on his

26  head.  Mendoza observed plaintiff, with the underwear on his head,

27  having a loud conversation with a tenant and yelling profanities.

28  To a person of reasonable caution, plaintiff's summoning of the

17

apartment tenants to their doors shortly before midnight for the purpose of selling them his open bottle of alcohol, and his engaging of the tenants in vocal or loud conversations that included the yelling of profanities, was upsetting the peace and quiet of the apartment tenants.  The officers therefore had probable cause to arrest and charge plaintiff with disorderly conduct.

Under Nev. Rev. Stat. Ann. § 574.105(a), it is unlawful for a person to "willfully and maliciously . . . beat [or] strike . . . a police animal."  Here, the deputies observed plaintiff striking the police canine on the head repeatedly, a fact plaintiff does not deny.  Although plaintiff asserts the violence was an act of "instictive self-defense" in response to an unlawful arrest, the court has already held that the arrest was lawful.  Given plaintiff's striking of the canine during the arrest, probable cause existed to charge plaintiff with mistreatment of a police animal.

Under Nev. Rev. Stat. Ann. § 205.463(2), "a person who knowingly (a) [o]btains any personal identifying information of another person; and (b) [u]ses the personal identifying information to avoid or delay being prosecuted for an unlawful act, is guilty of a category C felony. . . ."  Plaintiff does not deny that he used his brother's name to avoid detection for a probation violation, and in fact plaintiff pleaded guilty to that charge.  Accordingly, no claim of malicious prosecution can be based on this

charge.[8]

Under Nev. Rev. Stat. Ann. § 199.280(3), a "person who, in any case or under any circumstances not otherwise specially provided for, willfully resists, delays or obstructs a public officer in discharging or attempting to discharge any legal duty of his or her office shall be punished . . . [w]here no dangerous weapon is used in the course of such resistance, obstruction or delay, for a misdemeanor." At a minimum, an undisputed fact of this case is that plaintiff refused to place his arms behind his back to be handcuffed despite being ordered to do so. Accordingly, the deputies had probable cause to charge plaintiff with resisting a public officer.

Finally, plaintiff does not dispute that he was on probation at the time of this incident, that one of his conditions of probation was to abstain from alcohol, and that he was found by the deputies to be intoxicated. Accordingly, there was probable cause to charge plaintiff with a violation of his probation.

In sum, the court finds no issue of material fact as to whether there was probable cause to charge plaintiff with all five offenses. Moreover, plaintiff has presented no evidence that the deputies maliciously charged him for the purpose of denying him a constitutional right. Plaintiff's only argument on this point is

---

[8] Plaintiff's argument based on *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873 (9th Cir. 2002) is not only irrelevant given his guilty plea to this charge but also misplaced. Unlike in *Carey*, where the plaintiff was arrested for refusing to provide identifying information and the Ninth Circuit held the statute criminalizing such was unconstitutional, here the plaintiff had already been arrested and was later charged because he represented himself as someone else in order to avoid detection for a probation violation. *Carey* says nothing about the constitutionality of the statute under which plaintiff was charged in this case.

that malice can be inferred from a lack of probable cause.  The court has rejected this argument.  Accordingly, as plaintiff has shown no genuine issue of material fact with respect to his § 1983 malicious prosecution claim, defendants are entitled to summary judgment on this claim.

**IV.  Municipal Liability Related to Malicious Prosecution**

Plaintiff asserts a municipal liability claim against defendant Carson City based on an alleged policy and custom of allowing malicious prosecution.

There is no evidence in the record to substantiate this claim. Moreover, plaintiff has not shown that he suffered a violation of his right against malicious prosecution; therefore the city cannot be liable for causing a violation of said right.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). Accordingly, Carson City is entitled to summary judgment on this claim.

**V.  False Arrest**

Plaintiff asserts a claim of false arrest against defendants Mendoza and Surratt.

"In order to prove false arrest, a plaintiff must show the defendant instigated or effected an unlawful arrest." *Nau v. Sellman*, 757 P.2d 358, 360 (Nev. 1988).  For the reasons already discussed, the court holds as a matter of law that plaintiff's arrest was not unlawful as there was probable cause to arrest him for disorderly conduct.  Defendants are therefore entitled to summary judgment on this claim.

**VI.   State Law Malicious Prosecution**

Plaintiff asserts a claim of malicious prosecution under state law against defendants Mendoza and Surratt.

"[T]he elements of a malicious prosecution claim are: (1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).

As discussed, probable cause existed to charge plaintiff with the five offenses.  Further, plaintiff has presented no evidence of malicious intent.  Defendants are therefore entitled to summary judgment on this claim.

**VII. False Imprisonment**

Plaintiff asserts a claim of false imprisonment against defendants Mendoza and Surratt.  In Nevada, "[f]alse imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority."  Nev. Rev. Stat. § 200.460.  Probable cause is a defense to false imprisonment. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1144 (Nev. 1983).

As probable cause existed to arrest plaintiff and to charge him with the five offenses, plaintiff cannot prove a claim of false imprisonment.  Defendants are entitled to summary judgment on this claim.

**VIII. Negligent Hiring, Training, and Supervision**

Plaintiff asserts a claim of negligent hiring, training, and supervision against Carson City based on Mendoza, Surratt, and Ramsey's alleged unlawful acts.

Negligent hiring imposes a general duty on employers to ensure

that employees are fit for their positions.  *Burnett v. C.B.A. Security Serv., Inc.*, 820 P.2d 750, 752 (Nev. 1991).  "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996). Plaintiff's opposition points to no evidence that Carson City was negligent in hiring Mendoza, Surratt, or Ramsey.  Defendants are therefore entitled to summary judgment on the claim of negligent hiring.

An employer also has a duty to use reasonable care in training, supervising, and retaining its employees to make sure that the employees are fit for their positions.  *Hall*, 930 P.2d at 99.  Plaintiff argues that Carson City was negligent because it inadequately trained its officers and canines, allowed officers to use canines on every arrest, and allowed canines to lock and hold. Plaintiff also argues that Carson City was negligent "as to the City jail's recordkeeping."

Plaintiff does not elaborate on how the city jail's recordkeeping was deficient.  His argument that documents exist showing he should have been treated three times a week does not establish a triable issue of fact on this claim.  At any rate, plaintiff has not shown that any such deficiencies caused him any harm, as he received treatment for his wound that eventually healed his wound.  Therefore Carson City is entitled to summary judgment on this aspect of plaintiff's claim.

There is no evidence that Carson City trains deputies to deploy canines on "every arrest" or that officers are inadequately trained with respect to deploying canines.  Accordingly summary

1  judgment will be granted as to that part of plaintiff's claim.

2    Finally, although Carson City does not appear to dispute that

3  it trains its canines to "bite and hold," no such claim is included

4  in plaintiff's complaint.

5  **IX.   Respondeat Superior**

6    Plaintiff asserts a claim of respondeat superior against

7  Carson City based on Mendoza and Surratt's alleged intentional

8  torts because their conduct was foreseeable and authorized and

9  affirmatively ratified after the fact.

10    An employer is liable under a respondeat superior theory for

11  acts committed by its employee if those acts are committed within

12  the course and scope of the employment duties.  *See Rockwell v. Sun*

13  *Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996) ("[A]n

14  actionable claim on a theory of respondeat superior requires proof

15  that (1) the actor at issue was an employee, and (2) the action

16  complained of occurred within the scope of the actor's

17  employment.").

18    Because, as has been and will be discussed, plaintiff has not

19  shown any actionable state law claim underlying a respondeat

20  superior claim, the respondeat superior claim fails.  Carson City

21  is entitled to summary judgment on this claim.

22  **X.   Intentional Infliction of Emotional Distress**

23    Plaintiff asserts a claim of intentional infliction of

24  emotional distress against defendants Mendoza and Surratt.

25    The elements of an IIED claim are: (1) extreme and outrageous

26  conduct with either the intention of, or reckless disregard for,

27  causing emotional distress; (2) the plaintiff suffered severe or

28  extreme emotional distress; and (3) actual or proximate causation.

*Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (Nev. 1999).  The defendant's actions must "go beyond all possible bounds of decency [and be] atrocious and utterly intolerable." *Hirschhorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995).

Defendants assert that there is no evidence that Mendoza or Surratt engaged in extreme or outrageous conduct, and that their use of the canine and the taser was reasonable and justified under the circumstances.  Defendants also argue that plaintiff has proffered no evidence that the defendants acted with the intention to cause harm or with reckless disregard for causing plaintiff emotional distress.  Finally, defendants argue there is no evidence plaintiff suffered any extreme or severe emotional distress.

Plaintiff contends that because he was battered and assaulted, this claim should be allowed to proceed pursuant to *Olivero v. Lowe*, 995 P.2d 1023, 1026-27 (Nev. 2000).  However, plaintiff has proffered no evidence – and has made no argument – that he suffered severe or extreme emotional distress as a result of Mendoza's and Surratt's actions.  Accordingly, plaintiff has failed to show a genuine issue of material fact on one of the essential elements of this claim.  Defendants are therefore entitled to summary judgment on this claim.

**XI.  Eighth Amendment Cruel and Unusual Punishment/Fourteenth Amendment Deliberate Indifference to Serious Medical Needs**

Plaintiff asserts a claim of deliberate indifference against defendant Ramsey, as well as a derivative municipal liability claim

based on this conduct.[9]

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee inmate safety, which includes addressing serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated on other grounds by Sandin v. O'Connor*, 515 U.S. 472 (1995). Because plaintiff was a pre-trial detainee, his claims arise under the Fourteenth Amendment Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, because the rights under both the Eight and the Fourteenth Amendments are comparable, the Ninth Circuit applies the same standards to both claims. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

To state a claim under the Eighth and Fourteenth Amendments, plaintiff must show (1) an objectively, sufficiently serious deprivation; (2) that the individual defendants were "deliberately indifferent" to plaintiff's health and safety – that is, they must have had a "sufficiently culpable state of mind," *see Farmer*, 511 U.S. at 834; *Est. of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002); and (3) harm caused by the indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

---

[9] Although the factual allegations of plaintiff's complaint also assert that Mendoza and Surratt were deliberately indifferent to plaintiff's medical needs, including by refusing to allow him to be transported to the hospital in the ambulance, Count 11 discusses only Ramsey's and Carson City's alleged deficiencies. Nor does plaintiff argue in his opposition that Mendoza and Surratt were deliberately indifferent. However, even if plaintiff were raising such a claim, the undisputed facts are that Mendoza and Surratt immediately summoned fire and rescue, who bandaged plaintiff's wound, and then took plaintiff to the hospital. Such conduct was not, as a matter of law, deliberately indifferent to plaintiff's medical needs. Further, the evidence does not support any claim that the officers refused to allow plaintiff to be transported in the ambulance, but even if they did, there is no evidence such caused plaintiff further harm.

A prison official is deliberately indifferent to an inmate's serious medical needs where he or she "knows of and disregards an excessive risk to inmate safety." *Farmer*, 511 U.S. at 837. The defendants must both (1) be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) they must also draw the inference. *Id.*; *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Mere negligence is insufficient to establish deliberate indifference. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).

When the Eighth Amendment deprivation is a failure to treat a serious medical need, deliberate indifference requires showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (b) harm caused by the indifference. *See Jett*, 439 F.3d at 1096. Although the Ninth Circuit does not require a *de minimis* physical injury to sustain an Eighth Amendment claim, *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002), a delay in medical treatment is a sustainable claim only if a resulting harm is shown. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994).

Plaintiff asserts that defendant Ramsey was deliberately indifferent to his serious medical needs in the way he treated plaintiff's arm wound. First, plaintiff suggests that Ramsey's treatment may not have been proper because Ramsey testified that plaintiff was sent to wound care twice a week but Carson City

Sheriff's Office records indicate plaintiff should have been sent three times a week.  Plaintiff offers no support for his argument that Carson City records show he should have been sent three times a week for treatment but was actually sent only twice a week.  The records are not even before the court and were merely referenced in a footnote to defendants' motion for summary judgment for the opposite conclusion: that the records show plaintiff was *actually* treated three times a week at wound care.  (*See* Mot. Summ. J. 7 n.3).  Accordingly, the mere speculation and conjecture of the plaintiff that perhaps he was not treated as often as he should have been cannot establish any genuine issue of material fact that Ramsey was deliberately indifferent to his medical needs.

Second, plaintiff argues Ramsey may not be credible because while he claimed the wound was healing, the hospital found it was not.  (*See* Pl. Opp'n 6).  However, the undisputed evidence is that Ramsey believed the wound was healing until one day it was not, and it was only at this point that plaintiff was sent to the hospital for further care.  That the wound clinic found the wound was not healing at a time Ramsey also thought the wound looked worse does not impugn Ramsey's credibility.  Accordingly, this alleged discrepancy also does not create a genuine issue of material fact on this claim.

The undisputed facts establish that plaintiff received a significant amount of medical treatment for his wound from Ramsey, including daily dressing changes, cleaning of the wound, and administration of antibiotics and pain medication.  It is undisputed that the wound appeared to be healing, and when it appeared to Ramsey it no longer was, he asked for a second opinion

and then referred plaintiff for wound care at the hospital.   The court concludes there are no issues of material fact on which the trier of fact could conclude that Ramsey's treatment of plaintiff's wound was deliberately indifferent.

As to plaintiff's municipal liability claim against Carson City, plaintiff points to no evidence showing Carson City "repeated[ly] den[ies] adequate care."[10] (Compl. ¶ 50).   Further, as there is no underlying violation there cannot be a *Monell* claim based thereon.   *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

Accordingly, defendants are entitled to summary judgment on plaintiff's deliberate indifference claim.

## XII.  Qualified Immunity

Defendants Mendoza, Surratt, and Ramsey assert they are entitled to qualified immunity on all of plaintiff's federal claims against them.   Because the court has found no constitutional violation with respect to the malicious prosecution and deliberate indifference claims, the court need not consider whether qualified immunity applies with respect to those claims.   The court must, however, address Mendoza and Surratt's claim of qualified immunity with respect to plaintiff's excessive force claim.

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[10] The complaint also alleges that various unknown individuals ignored plaintiff's repeated kites for medical care, but plaintiff has not identified any such individuals and has not explained what treatment he requested in his kites that he did not receive.

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
"The qualified immunity question turns on the 'objective legal
reasonableness' of the action." *Herb Hallman Chevrolet, Inc. v.
Nash-Holmes*, 169 F.3d 636, 642 (9th Cir. 1999).  To be clearly
established, the law "must be established at more than an abstract
level; it must have been clearly established in a more
particularized, and hence more relevant, sense: The contours of the
right must be sufficiently clear that a reasonable officer would
understand that what he is doing violates that right." *Cruz v.
Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002).

    To address assertions of qualified immunity at summary
judgment, the court employs a two-pronged inquiry.  The first prong
"asks whether the facts, taken in the light most favorable to the
party asserting the injury, show the officer's conduct violated a
federal right." *Tolan v. Cotton*, – U.S. –, 134 S. Ct. 1861, 1865
(2014) (internal punctuation omitted).  The second prong "asks
whether the right in question was 'clearly established' at the time
of the violation." *Id.* at 1866.  The court "may not resolve
genuine disputes of fact in favor of the party seeking summary
judgment" under either prong. *Id.*

    As discussed above, considering the evidence in the light most
favorable to plaintiff, a genuine issue of material fact exists as
to whether Mendoza's and Surratt's actions violated plaintiff's
right to be free of excessive force.  The question cannot be
resolved at summary judgment.  The next question, then, is whether,
under clearly established law, it would have been clear to the
defendants that their actions violated that right.

    At the time of this incident, "[t]he right to be free from the

application of non-trivial force for engaging in mere passive
resistance was clearly established." *Gravelet-Blondin v. Shelton*,
728 F.3d 1086, 1092 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1292
(2014). "While 'purely passive resistance can support the use of
some force, [ ] the level of force an individual's resistance will
support is dependent on the factual circumstances underlying that
resistance." *Id.* at 1091, quoting *Bryan v. MacPherson*, 630 F.3d
805, 830 (9th Cir. 2010). It was further clearly established that
the use of a taser dart was an intermediate level of force that
must be justified by a strong governmental interest. *See Bryan*,
630 F.3d 805. Finally, it was clearly established that under
certain circumstances employing a police canine may result in
excessive force. *See Watkins v. City of Oakland*, 145 F.3d 1087,
1093 (9th Cir. 1998); *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th
Cir. 1994) ("[W]hen 'the defendants' conduct is so patently
violative of the constitutional right that reasonable officials
would know without guidance from the courts' that the action was
unconstitutional, closely analogous pre-existing case law is not
required to show that the law is clearly established.").

The question of whether the officers' conduct in this case
violated clearly established law turns on the objective
reasonableness of the defendants' conduct. Viewing the evidence in
a light most favorable to plaintiff, as the court must on summary
judgment, the facts are as follows. The decision to arrest
plaintiff for a misdemeanor, nonviolent crime was made only after
it was determined there was no way to provide plaintiff a way home.
Plaintiff was extremely intoxicated, he had made no aggressive
moves or threats toward the officers, and he did not appear to be

armed, nor did the defendants indicate they believed he was armed. Plaintiff made no attempt to hide or escape.  He appeared to be cooperative.  Before informing plaintiff that he was going to be arrested, and before any perceived act of resistance by plaintiff, Surratt brought out the police canine.  When Mendoza told plaintiff he was going to jail, plaintiff – who was sitting on the ground – refused to put his arms behind his back and locked his arms in front of him to resist Mendoza's efforts to pull his arms back for handcuffing.  After Mendoza warned plaintiff that if he continued "to resist" he would be tasered, and plaintiff then tried to stand, Mendoza applied the taser and plaintiff lunged forward onto his knees in reaction to the taser.  According to Mendoza, that is when Surratt deployed the police canine, which bit plaintiff in the buttocks.[11]  Plaintiff fought off the dog and tried to stand; Surratt then deployed the canine again, and this time the canine held its bite on plaintiff's forearm for several seconds, causing a severe puncture wound.  Plaintiff repeatedly hit the canine as it bit into his arm to dislodge the canine.  Finally, after the canine was recalled and as plaintiff tried to stand again, Mendoza, without any additional warning, applied the taser dart.  Plaintiff was immmobilized, and the handcuffs were applied.  Thereafter, he was transported to first the hospital and then jail.  As a result of the dog bite, plaintiff was treated for the wound to his forearm for about four months and ultimately had two surgeries to repair the wound.

---

[11] Although Surratt testified at deposition that he gave plaintiff a warning prior to deploying the canine, Mendoza did not state in his deposition that such a warning was given.

Although Surratt has described plaintiff as "angry" and his behavior as "aggressive" and increasingly violent, he points to no objective facts to substantiate these conclusory statements. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Gravelet-Blondin*, 728 F.3d at 1091, quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). The objective facts of this case – that plaintiff refused to put his arms behind his back, tried to stand up, and hit the police canine as it bit into his arm – at a minimum raise issues of fact as to whether plaintiff was aggressive and violent or whether such conduct constituted passive resistance and did not justify two attacks by the canine, and the application of a contact tase and a taser dart. It is for the trier of fact to determine whether the force used by the officers under the facts of this case was excessive and violated plaintiff's constitutional rights.

**XIII. Discretionary Immunity**

Defendants assert they are entitled to discretionary immunity as to plaintiff's state law claims. However, because the court finds no triable issue of fact on any of plaintiff's state law claims, it is unnecessary to decide whether and to what extent the defendants might be immune under Nev. Rev. Stat. § 41.032(2) for their actions in this case.

/

/

/

/

/

**Conclusion**

In accordance with the foregoing, defendants' motion for summary judgment is **DENIED** with respect to plaintiff's excessive force against the individual defendants Mendoza and Surratt and is **GRANTED** in all other respects.

**IT IS SO ORDERED.**

DATED: This 4th day of February, 2015.

_Howard D M<sup>c</sup>Kibben_
_____
UNITED STATES DISTRICT JUDGE